UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIGUEL HERNANDEZ,

                Plaintiff,

– against –

THE CITY OF NEW YORK,
*and* CAPTAIN RACHEL MORGAN,
*(Badge No. 1867) individually and on
behalf of the City of New York,*

                Defendants.

**OPINION AND ORDER**

18 C IV. 5870 (ER)

Ramos, D.J.:

        Miguel Hernandez is suing the City of New York and Captain Rachel Morgan, under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York City Human Rights Law, New York City Administrative Code § 8-101 ("NYCHRL"). Specifically, Plaintiff alleges that the Defendants subjected him to disparate treatment on the basis of his gender and retaliated against him when he sought legal recourse. The Defendants now move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, that motion is denied in part and granted in part.

**I.    Background**

        Plaintiff is a male employee of the New York City Department of Correction ("NYCDOC"). Am. Compl. ¶ 3. He was hired by the NYCDOC in June 2008, was assigned to the Manhattan Detention Complex ("MDC") in April 2013, and continues to work at the MDC as a correction officer. *Id.* ¶¶ 8-10.

Between 2014 and 2018, Plaintiff was assigned to a variety of posts within the MDC which he claims are dangerous and undesirable. *Id.* ¶¶ 19-25. He has personally observed that male employees are more likely to be assigned to these dangerous and undesirable posts than female employees. *Id*. ¶ 19. Plaintiff identifies three female officers who received more desirable and less dangerous posts than him over the last five years despite his seniority, attendance, skills, and performance. *Id*. ¶ 25. On the dates of December 27, 2016, January 9, 2017, April 29, 2017, and May 19, 2018, Plaintiff was initially assigned to work on safe posts but was moved to more dangerous posts while female officers were moved from dangerous posts to safe posts. *Id.* ¶¶ 11-22. Additionally, on September 30, 2014, Plaintiff requested to be moved from one of these posts. *Id.* ¶ 24. In response to this request, he was told by Officer Quintana, the officer responsible for making the schedule, that he had been placed in his post because "[he] was a big guy and [he] won't go anywhere but there." *Id*.

Furthermore, on April 29, 2017, Captain Rachel Morgan taunted the Plaintiff by saying "Officer Hernandez I am going to help you to your Clinic Post because you are scared. You are scared Officer Hernandez, right?" *Id.* ¶ 17. On a previous occasion, Captain Morgan told another male employee "Officer Gregory too bad you can't handle the job." *Id*. ¶ 25. Plaintiff contends that Captain Morgan did not treat female officers in this manner. *Id*.

Plaintiff also alleges that he did not receive assignments that he should have gotten due to his seniority. *Id.* ¶ 23. On September 26, 2016, Plaintiff applied for approximately 14 job assignments, several of which were given to more junior female officers. *Id*. Finally, on November 7, 2017, Plaintiff's locker was taken away and given to a junior officer while he was on medical leave. *Id.* ¶ 14. Eight female officers did not have their lockers taken away while

they were on pregnancy, sick, or other leave. *Id.* ¶ 15. Plaintiff concedes that attendance, performance, and skills are considerations in job assignments in addition to seniority. *Id.* ¶ 23.

In response to these actions, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on February 8, 2018. Compl. 6. The EEOC dismissed the complaint and issued a Notice of Right to Sue letter as it was unable to conclude that Plaintiff was "subjected to an adverse employment action motivated by discriminatory animus". *See* Doc. 1-1, 1-2. Following the dismissal of his EEOC complaint, Plaintiff filed this action on June 28, 2018.

Plaintiff alleges that the MDC took five retaliatory actions against him because of his EEOC complaint. Am. Compl. ¶¶ 29-33. On an unrecorded date, Defendants ignored Plaintiff's request for a hearing with the firearm review board on whether his firearm privileges, which were taken away during a domestic dispute case that was subsequently dismissed, should be reinstated. *Id.* ¶ 29. Plaintiff does not state whether it was his ability to carry a firearm on or off duty that was taken away or how the Defendant's actions meaningfully deviated from its standard operating procedures, if at all. On November 29, 2018, Defendants brought disciplinary charges against Plaintiff. *Id.* ¶ 32. Plaintiff does not explain what incident prompted the charges only that "the supervisors alleged statements that the plaintiff did not make" and that the proposed punishment was excessive because other officers had done the same thing without being punished. *Id*. On June 20, 2018, Defendants brought disciplinary charges against Plaintiff and took four vacation days away from him. *Id.* ¶ 30. Again, Plaintiff does not explain what incident prompted the disciplinary charges only that the punishment was excessive in comparison to the treatment of other officers. *Id*. On an unrecorded date, Plaintiff was designated as a chronically absent employee and his appeal of this designation for medical

reasons was denied on September 10, 2018. *Id.* ¶ 31; *See* Doc. 29, 19. Plaintiff does not describe why he was given this designation, on what grounds he made his medical appeal, or how the denial of his appeal differed from the Defendant's treatment of other employees. On December 8, 2018 Plaintiff was given a late slip while two employees who arrived even later did not receive late slips. Am. Compl. ¶ 33.

Defendants now move to dismiss Plaintiff's complaints on three grounds. First, that Plaintiff's claims are barred in part by the statute of limitations. Second, that Plaintiff fails to state a plausible claim of disparate treatment on the basis of gender under Title VII or the NYCHRL. Third, that Plaintiff fails to state a plausible claim for retaliation under Title VII or the NYCHRL.[1]

## II. Relevant Legal Standard

### A. 12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept all factual allegations in the complaint as true and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

---

[1] In his original complaint, Plaintiff brought a hostile work environment claim in addition to a disparate treatment claim and a retaliation claim. Compl. 5. In his second amended complaint, Plaintiff only brings the disparate treatment claim and the retaliation claim. Am. Compl. ¶¶ 35-40. As "all causes of action alleged in an original complaint which are not alleged in an amended complaint are waived," the Court shall not consider the hostile work environment claim. *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (quoting *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986)).

4

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Though a plaintiff may plead facts alleged upon information and belief "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "'accompanied by a statement of the facts upon which the belief is founded.'" *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) (citation omitted); *see also Williams v. Calderoni*, No. 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) (finding pleadings based upon information and belief insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions).

### III. Discussion

#### A. Statute of Limitations

In cities like New York, where an administrative body is empowered to review employment discrimination claims, a Title VII claim must be brought in that forum within 300 days of the alleged unlawful conduct in order to be considered timely. *See Tewksbury v. Ottaway Newspapers, Inc.,* 192 F.3d 322, 328-329 (2d Cir. 1999); *See also* 42 U.S.C. § 2000e-5(e)(1). Here Plaintiff filed a charge of discrimination with the EEOC on February 8, 2018. Doc. 1, 6. Accordingly, all alleged violations of Title VII that occurred prior to April 4, 2017

5

fall outside of the 300 day filing period. Specifically, Plaintiff's untimely allegations are that he was posted to dangerous and undesirable posts between 2014 and April 4, 2017 including incidents on December 27, 2016 and January 9, 2017, that he was not selected for his preferred assignments on September 26, 2016, and that his request to move posts on September 30, 2014 was denied. Plaintiff's allegations that are not barred by the Title VII statute of limitations are that he was posted to dangerous and undesirable posts since April 4, 2017 including specific incidents on April 29, 2017 and May 19, 2018, that he was taunted on April 29, 2017 by Captain Morgan, and that on November 7, 2017 his locker was taken away and given to a junior officer.

In order to file suit under the NYCHRL, a claim must be brought within three years of the alleged discriminatory practice or act. *See* N.Y.C. Amin. Code § 8-502(d). This case was filed on June 28, 2018 so all allegations prior to June 28, 2015 fall outside of the three year filing period. Specifically, Plaintiff's untimely claims are that he was posted to dangerous and undesirable posts between 2014 and June 28, 2015 and that his request to move posts on September 30, 2014 was denied. In addition to the timely claims under Title VII, Plaintiff's allegations that are not barred by the NYCHRL statute of limitations are that he was posted to dangerous and undesirable posts since June 28, 2015 including specific incidents on December 27, 2016 and January 9, 2017 and that he was not selected for his preferred assignments on September 26, 2016.

In his opposition papers, Plaintiff concedes that several allegations fall outside the statute of limitations. *See* Doc. 32, 11. However, Plaintiff alleges that "the discriminatory actions taken by Defendants against Plaintiff are of the type that have been continuing in nature." Doc. 32, 12. The continuing violation doctrine is applicable to both the Title VII and the NYCHRL claims.

*See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011).

Under the continuing violation doctrine, "where a plaintiff can demonstrate an ongoing or continuing violation of his federally protected rights, the plaintiff is entitled to bring suit challenging all conduct that was part of the violation, even conduct that occurred outside the limitations period." *Ruane v. Cnty. of Suffolk*, 923 F. Supp. 2d 454, 459 (E.D.N.Y. 2013) (internal quotation marks omitted). However, "courts of this circuit consistently have looked unfavorably on continuing violation arguments . . . and have applied the theory only under compelling circumstances." *Id.* (quoting *Blankman v. Cnty. of Nassau*, 819 F. Supp. 198, 207 (E.D.N.Y. 1993)). Where particular acts serve to put a plaintiff on notice of his claim, the continuous violation doctrine is inapplicable, even if there were subsequent acts constituting a violation. *See Kellogg v. New York State Dep't of Corr. Servs.*, No. 07 Civ. 2804 (BSJ), 2009 WL 2058560, at *1 (S.D.N.Y. July 15, 2009) ("[T]he continuing-violation doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day."); *see also Libbey v. Vill. of Atl. Beach*, 982 F. Supp. 2d 185, 212, No. 13 Civ. 2717 (JS), 2013 WL 5972540, at *20 (E.D.N.Y. Nov. 4, 2013) (finding no continuing violation despite allegations that "span[ned] several years" where time-barred conduct was a discrete act occurring on a specific date). Thus, allegations of "discrete acts, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts within the limitations period." *Chin v. Port Auth. of NY & NJ*, 685 F.3d 135, 157 (2d Cir. 2012).

Plaintiff's allegations that he was given dangerous and undesirable work assignments and that his requests to be transferred were ignored are plainly allegations of discrete acts occurring

7

on specific dates that do not constitute a single violation. *See Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 153 (E.D.N.Y. 2005) (citing *Coudert v. Janney Montgomery Scott, LLC*, 2005 WL 1563325 (D. Conn. 2005)) ("It is well-settled that alleged adverse employment practices such as failure to promote, failure to compensate adequately, undesirable work transfers, and denial of preferred job assignments are considered discrete acts"). Whether or not these actions were undertaken pursuant to a general policy of discrimination is irrelevant per *Chin v. Port Authority*. Accordingly, the continuing violation doctrine cannot save plaintiff's untimely allegations from dismissal.[2]

## B. Failure to State a Claim

The Court now address those allegations that are not barred by the statute of limitations.

### i. Gender Discrimination Under Title VII

Title VII employment discrimination claims are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kovaco v. Rockbestos*, 834 F.3d 128, 136 (2d Cir. 2016). Under that framework, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. In order to establish a *prima facie* case, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003).

---

[2] In the alternative, these allegations will be dismissed for failure to state a claim as described *infra* Section III.B.ii. as Plaintiff fails to pleads facts that show he was subjected to a materially adverse event and fails to plead facts that give rise to a plausible inference of discrimination.

8

The standard for pleading employment discrimination applies in conjunction with the *Iqbal* plausibility standard. The Supreme Court has held that in an employment discrimination action, a complaint need not contain specific facts that establish a *prima facie* case of discrimination. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002); *E.E.O.C. v. Port Auth. of New York and New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) (recognizing that "*Swierkiewicz* has continuing viability, as modified by *Twombly* and *Iqbal*"); *Trachtenberg v. Dept. of Educ. of City of New York*, 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) ("The Second Circuit has suggested that at a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal,* even if pleading a *prima facie* case is not required") (internal quotation marks and citations omitted). However, the elements of a *prima facie* discrimination case "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Trachtenberg*, 937 F. Supp. 2d at 465 (citing *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. Feb. 7, 2013)). The facts alleged must merely "give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase" of the case. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Thus, "in the absence of a facially plausible discrimination claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at the pleading stage is warranted." *Trachtenberg*, 937 F. Supp. 2d at 465 (citing *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 Civ. 2256 (LAP), 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012)).

It is not contested that Plaintiff belongs to a protected class or that he was qualified for his position. With respect to the third prong of the *prima facie* case, an "adverse employment action" is one that causes a "materially adverse change in the terms and conditions of employment." *Galabya v. New City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Examples

of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (quoting *Crady*, 993 F.2d at 136). The assignment of a disproportionately heavy workload can constitute an adverse employment action. *See Feingold v. New York*, 366 F.3d 138, 152–53; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). However, "where assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules or work assignments does not, without more, rise to the level of an adverse employment action." *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014) (citing *Williams v. Ford Motor Co.*, No. 12–CV–0411, 2014 WL 1572302, at *13 (W.D.N.Y. Apr. 18, 2014)); *See also Staten v. City of New York*, 653 F. App'x. 78, 81 (2d Cir. 2016) ("receiving orders to work in dangerous locations or control dangerous situations, absent more, does not amount to a hostile work environment given Staten's employment as a police officer").

Plaintiff contends that his assignments to dangerous and undesirable positions were adverse employment actions akin to a disproportionately heavy workload. *See* Doc. 32, 17-18. These allegations are that since April 4, 2017 he has been assigned to dangerous and undesirable positions including on the specific dates of April 29, 2017 and May 19, 2018. However, the mere receipt of these assignments is insufficient to establish a materially adverse employment action as the assignments fell within the duties of the Plaintiff's position. *See Staten v. City of New York*, 16-CV-5317, 2017 WL 2937698, at *7 ("Although allegedly unpleasant and inconvenient, the plaintiff's assignments to work the barrier section, transport a prisoner, and guard the precinct cells were not adverse employment actions because they were standard officer

assignments and were unaccompanied by any materially adverse change"). Plaintiff does not plead other facts to demonstrate that these assignments were materially adverse. As the Plaintiff has not established the existence of any materially adverse event this Title VII gender discrimination claim must be dismissed.[3]

Plaintiff also contends that the denial of his 14 applications for new job assignments were materially adverse events that can sustain a gender discrimination claim. *See* Doc. 32, 17. However, those incidents fell outside of the Title VII statute of limitations. Even if they were not time barred, "receiving unfavorable schedules or work assignments does not, without more, rise to the level of an adverse employment action." *Johnson*, 58 F. Supp. 3d, at 224 (citing *Williams* WL 1572302, at *13). As Plaintiff has not plead facts to show that those events were accompanied by any change in his circumstances, he has not plead facts sufficient to show the existence of a materially adverse event and hence his claim must be dismissed.

In addition to establishing a materially adverse event, a plaintiff must establish that the event occurred under circumstances giving rise to an inference of discriminatory intent. The plaintiff must plead facts that either "directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). To show circumstances indirectly giving rise to an inference of discrimination, a plaintiff "must show that [he] was treated differently from 'similarly situated' [female employees]." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). "To be 'similarly situated,' the individuals with whom [the plaintiff] attempts to compare [himself] must be similarly situated in all material respects." *Id. See also*

---

[3] In the alternative, Plaintiff has also not plead sufficient facts show the fourth prong that his treatment occurred under circumstances giving rise to an inference of discriminatory intent. This is described *infra* with regard to Plaintiff's NYCHRL claim.

*Bennett v. Health Mgmt. Sys. Inc.*, 936 N.Y.S.2d 112, 125 (N.Y. App. Div. 2011) (affirming the dismissal of a NYCHRL discrimination claim because plaintiff failed to identify a similarly situated person).

Plaintiff alleges that he was treated differently than "his female counterparts who came back from maternity leave" because his locker was taken away while he was on medical leave. Doc. 32, 17. However, Plaintiff makes no attempt to establish that he was similarly situated to his female colleagues outside of the fact that both were on leave. Am. Compl. ¶ 15. He does not compare the length of his leave or his amount of seniority to that of the other officers. Plaintiff has therefore not plead facts to plausibly support the inference that he was treated differently from female officers who were similarly situated in all material respects.

Plaintiff also alleges that he was treated differently than his female counterparts when Captain Rachel Morgan taunted him by saying "Officer Hernandez I am going to help you to your Clinic Post because you are scared. You are scared Officer Hernandez, right?" *Id.* ¶ 17. The only related fact that Plaintiff pleads is that Captain Morgan told another male officer "too bad you can't handle the job." Am. Compl. ¶ 20. Plaintiff does not attempt to identify similarly situated females officers but he pleads "upon information and belief" that Captain Morgan "would never have made such a taunt to a female correction officer." *Id*. ¶ 17. When pleading on information and belief the plaintiff needs to provide a "statement of the facts upon which the belief is founded." *Prince*, 427 F. Supp. 2d at 385. Plaintiff has not done so here so his claim must be dismissed.

### ii. Gender Discrimination Under the NYCHRL

"To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that [he] has been treated less well than other

employees because of [his] gender." *Mihalik*, 715 F.3d at 110 (internal quotation marks and citations omitted). In order to do this, a plaintiff may either provide direct evidence or show that he was treated differently from similarly situated individuals. *See Bennett*, 936 N.Y.S.2d at 125 (affirming the dismissal of a NYCHRL discrimination claim because plaintiff failed to identify a similarly situated person). At the pleading stage, plaintiff need only plead facts that give plausible support to his claim. *See Barbosa v. Continuum Health Parters, Inc.*, 716 F. Supp.2d 210, 215 (S.D.N.Y. 2010) (applying the Swierkiewicz rule to the NYCHRL). Plaintiff raises the same allegations about his locker being taken away and being taunted by Captain Morgan as he did under Title VII. Am. Compl. ¶¶ 14, 17. These complaints are dismissed for the same reasons discussed *supra*.

Plaintiff also alleges that he was treated differently than his female counterparts when he applied for 14 job assignments and was denied each time while more junior female officers were granted the assignments. Am. Compl. ¶ 23. However, Plaintiff concedes that assignments were determined not only by seniority but also by attendance, performance, and skills. *Id*. Plaintiff does not plead any facts, outside of seniority, to show that he was similarly situated to the female officers who received the assignments. Hence, he has not plead facts to plausibly support the inference that he was treated differently from female officers who were similarly situated in all material respects.

Plaintiff also alleges that since June 2015 he was assigned to dangerous and undesirable posts because of his gender. Am. Compl. ¶¶ 11-23. As support for this claim, Plaintiff pleads that he "personally observed fewer females assigned to" the dangerous and undesirable posts. *Id*. ¶ 19. Even if true, this observation lacks the required causal element that the Plaintiff's assignment to certain posts be because of his gender as he does not plead facts that show the

13

existence of similarly situated female workers. Read liberally, Plaintiff's non-barred allegations of discrimination on April 29, 2017 and May 19, 2018 and his identification of three female employees who received more desirable and less dangerous assignments "despite Plaintiff's seniority, attendance, skills, and performance" were attempts to show that he was treated differently from similarly situated female employees. *Id*. ¶¶ 11-25. But, these allegations are conclusory as he pleads no facts to show that he was in fact similarly situated to these female officers in terms of attendance, skills, and performance.

However, "verbal comments may also raise an inference of discriminatory motivation where a plaintiff alleges a nexus between the remarks and the alleged adverse action." *Cherry v. New York City Housing Authority*, No. 15 Civ. 6949 (MKB), 2017 WL 4357344, at *19 (E.D.N.Y. Sept. 29, 2017). Here, Plaintiff alleges that the officer responsible for making his schedule told him that he was given his posts because "[he] was a big guy and [he] won't go anywhere but there." Am. Compl. ¶ 24. While this statement was made outside of the statute of limitations, the "statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period." *Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001); *See also United Air Lines v. Evans*, 431 U.S. 553, 558 (1977); *Mihalik* 715 F.3d at 111 ("in evaluating the plaintiff's claim . . . . courts must consider the totality of the circumstances").

To determine whether a comment is a stray remark or indicative of the Defendants' intent the Court considers (1) who made the remark, (2) when the remark was made in relation to the employment decision at issue, (3) whether a reasonable juror could view the remark as discriminatory, and (4) whether the remark was made in a context related to the decision-making process. *See Schreiber v. Worldco, LLC*, 324 F.Supp.2d 512, 518 (S.D.N.Y. 2004); *See also*

14

*Wanamaker v. Westport Board of Education*, 899 F.Supp.2d 193, 208 (D.Conn 2012). Although the statement was made more than a year before the first actionable event, Plaintiff has plead sufficient facts to show that it may be indicative of Defendant's intent. Not only was the statement made by the officer responsible for making Plaintiff's schedule, but the statement can be read as proof that Plaintiff was assigned less desirable tasks because of his gender. Given the minimal burden at the pleading stage of alleging facts that "give plausible support to a minimal inference of discriminatory motivation," this is enough, but barely, to establish that the dangerous and undesirable assignments were motivated by gender. *Littlejohn*, 795 F.3d at 311. Thus, to the extent that it is not barred by the statute of limitations, Plaintiff's NYCHRL gender discrimination claim based upon his assignment to more dangerous and less desirable posts is not dismissed.

Finally, in his Opposition Brief, Plaintiff contends that Defendants discriminated against him on the basis on his gender on June 20, 2018 by taking away four of his vacation days and on September 10, 2018 by denying his chronic medical appeal and by placing him on probation. *See* Doc. 32, 19. However, in his complaint, Plaintiff only alleged that the disciplinary actions were made in retaliation for his EEOC activity not that they were the basis of his gender discrimination claim. In his amended complaint, Plaintiff makes no mention of Defendants placing him on probation. As a complaint cannot be amended by the briefs in opposition to a motion to dismiss, the court will not consider these allegations.[4] *See Islam v. Goord*, 2006 WL 2818651, at *1 (collecting cases).

### iii. Retaliation

To state a claim for retaliation under Title VII, a plaintiff must show that: (1) he was

---

[4] In the alternative, Plaintiff provides no evidence that these actions were motivated by his gender and hence they would be dismissed in any event *see infra* III.B.iii.

engaged in a protected activity; (2) the defendant was aware of the protected activity; (3) he suffered a materially adverse action; and (4) there is a causal connection between his protected activity and the materially adverse action. *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citations omitted). With regards to the fourth prong, a plaintiff may establish the causal connection requirement either directly, by offering evidence of retaliatory animus, or indirectly, by demonstrating that the protected activity was followed in close proximity by the adverse treatment. *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citations omitted); *see also Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 n.5, 554-55 (2d Cir. 2001) (collecting cases); *Woods v. Enlarged City Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 528-29 (S.D.N.Y. 2007) (same), *aff'd*, 288 F. App'x 757 (2d Cir. 2008).

Plaintiff's formal allegations of discrimination, filing his complaint with the EEOC on February 8, 2018 and filing this action on June 28, 2018, are protected activity. *See 42 U.S.C.A. § 2000e-3(a)* ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has . . . participated in any manner in an investigation, proceeding, or hearing under this subchapter"). Plaintiff alleges five retaliatory actions; but, even assuming they are materially adverse, his claims still fail as he has not plead facts from which the court can plausibly draw a causal connection.

Plaintiff has not plead any facts as to when Defendant ignored his request for a firearm board review and hence the court cannot determine whether the temporal connection was very

16

near. Am. Compl. ¶ 29. With regards to his other allegations, while there is no firm temporal cutoff in the absence of additional factual support for causation, "two months between the protected activity and the adverse employment action seems to be the dividing line." *Wright v. N.Y. City Off–Track Betting Corp.* 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Cunningham v. Consol. Edison Inc.*, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006). The denial of Plaintiff's medical appeal on September 10, 2018, the disciplinary charges on November 29, 2018, and the late slip on December 8, 2018 were seven to ten months after Plaintiff's complaint to the EEOC and two and a half to five months after the filing of this action. Am. Compl. ¶¶ 31-33. As none of these allegations of retaliation fall within the two month window, all must be dismissed. The final allegedly retaliatory action, the June 20, 2018 disciplinary charge, happened more than four months after Plaintiff's complaint to the EEOC and before this action was filed. Am. Compl. ¶ 30. As this action occurred more than two months after the EEOC complaint and Plaintiff has plead no facts to demonstrate that this was preemptory retaliation, this allegation must be dismissed as well.

To establish a retaliation claim under the NYCHRL, Plaintiff needs to prove (1) that the plaintiff participated in a protected activity, (2) that the defendant was aware of that participation, (3) that the defendant took an action that was reasonable likely to deter the plaintiff from engaging in a protected activity, and (4) the existence a causal connection between the plaintiff's participation in the protected activity and the defendant's action. *Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d 739, 740 (N.Y. App. Div. 2013). Plaintiff's formal charges of discrimination, filing his complaint with the EEO on February 8, 2018 and filing the action on June 28, 2018, are protected activity. *See* N.Y.C. Amin. Code § 8-107(7); *Adams v. City of New York*, 837 F. Supp. 2d 108, 121 (E.D.N.Y. 2011).

17

When the only evidence in support of a retaliation claim is temporal proximity, "as little as a few months between the protected activity and the alleged retaliation have been found to break any causal connection as a matter of law." *Jones v. The City of New York*, No. 150316, 2018 WL 1256993 (N.Y. Sup. Ct. 2018); *Nobrega v MTA Metro-N. R.R.*, No. 152527, 2015 WL 1871923 (N.Y. Sup. Ct. 2015); *See also Parris v New York City Dept. of Educ.*, 111 A.D.3d 528, 529 (1st Dept 2013) ("without other evidence, five months is not sufficient to establish the requisite causal connection"); *Thior v. Jetblue Airways Corp.* (N.Y. Sup Ct, New York County 2019) ("four months is too far removed to establish a causal nexus"). But, retaliation within "two months . . . may establish the necessary causal nexus between the protected activity and her discharge." *Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 A.D.3d 18, 25 (1st Dept. 2014); *See also Lamberson v. Six W. Retail Acquisition, Inc.*, 122 F. Supp. 2d 502, 512 (S.D.N.Y. 2000) ("Lamberson was fired approximately two months after he complained"). Given that the alleged retaliatory activities fall more than two months after the protected activities, Plaintiff's NYCHRL allegations are dismissed for the same reason as his Title VII allegations.

**IV.   Leave to Amend**

The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 Fed. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of N.Y.*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted)). Here, while the Court has already granted Plaintiff the opportunity to amend his complaint, it was not in the context of a motion to dismiss and the court has, therefore, not provided guidance as to how his claims may be adequately made. The Second Circuit has reaffirmed that the

18

"liberal spirit" of the Federal Rules entails a "strong preference of resolving disputes on the merits." *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190-91 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)). Courts should not dismiss claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id.* Therefore, only those claims that are barred by the statute of limitations, the claims that could not be liberally read to give indication of a valid claim, are dismissed with prejudice while all other claims are dismissed without prejudice.

## V. Conclusion

For the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 28.

It is SO ORDERED.

Dated: June 7, 2019
New York, New York

Edgardo Ramos, U.S.D.J